and Mr. Merriman. Good morning. Good morning, your honors. May it please the court, Brian I request to reserve five minutes for rebuttal. Here, the district court erred by simply dismissing the plaintiff's or the defendant's primary rights argument without analysis and by failing to recognize the contractual bar in the settlement agreement's release provisions on any class members' rights. potential future claims for punitive damages. Here, the plain language of the settlement agreement expressly bars the plaintiff's request for punitive damages in their now pending personal injury or property damage cases because those punitive damage requests are not part of the claims for personal injury, wrongful death, or property damage. In addition, race puticata bars the punitive damage claims under California's primary rights doctrine. The plaintiffs based their punitive damage claims on the allegations that the defendants knew but intentionally concealed the alleged risk of using the Norcold refrigerators. Those allegations are the same as the allegations that were released in the class action but they are not at all the basis for the personal injury or property damage causes of action. Those are the same core class allegations in the Etter and Chau cases and those were specifically released in the class settlement agreement and they were not reserved in the settlement agreement. In each of the currently pending actions, the plaintiffs copied and pasted those class allegations that they released verbatim into their punitive damages claims in these pending actions. So, it's important to note that for the purpose of race puticata, it is a punitive damage, a separate claim than a personal injury claim. It's the remedy on a personal injury claim. Yes, your honor. It is. The personal injury or property damage claim is based on the refrigerator or something malfunctioning causing an injury or a fire. For race puticata purposes, the injury is the harm suffered or, I'm sorry, the claim is the harm suffered or the injury and it's not a cause of action in the typical sense that lawyers think of it and that's in the Bill Aker's case at 576 and 577 where they stated that. If punitive damage is not a separate claim, I don't understand how it's not reserved. In a sense, it's part of the personal injury claim. I don't understand how it's not reserved as part of the reservation section. It's not part of the claim in itself. It may arise out of the claim. It may arise out of the claim, but that claim, that punitive damage aspect of the claim requires separate proof and that's shown here because the plaintiffs rely on entirely separate allegations and a separate standard. Your honor, that issue was addressed in the Lakin v. Watkins case by the California Supreme Court. In Lakin, the California Supreme Court specifically held, and I'm quoting Lakin, they quote, Punitive damages are awarded for the sake of example and by way of punishing the defendant. By definition, they are not intended to make the plaintiff whole by compensating for loss suffered, close quote, and that's Lakin at 664 and that's the California Supreme Court on this issue and that reasoning in Lakin has since been followed by the California Supreme Court in other cases cited in our brief like Ferguson v. Leeper-Brazer and I think the Dynament case. Well, then, I mean, if Lakin says that punitive damage is a rise out of a personal injury claim, then how is that not reserved? The reservation provision is expressly reserved personal injury claims and if it arises out of that, that is not part of, it's not settled then. Because, your honor, for purposes of res judicata, the term cause of action, so here the property damage or personal injury cause of action is based on the harm suffered or the injury as opposed to the theory asserted. So, your honor's question is, is it part of the personal injury or property damage claim? But, Phil Akers tells us that when talking about what the cause of action is here, we have to focus on the harm suffered or the injury and that's the harm suffered when the plaintiff's punitive damages is the exact same harm that they alleged and released in the class action. Which is, you knew about these defective refrigerators, you never disclosed it to the consumers and therefore, there's false advertising or other injury and that's the harm that the plaintiffs exclusively rely on in the property damage or personal injury cases. And that is completely separate from the harm they rely on for the property damage or personal injury cause of action itself, which is separate and that is, as I mentioned before, just was there an injury from a fire or defective refrigerator or was there property damage? One thing I find odd about the res judicata argument is usually res judicata. You argue that the first case settled the issue, in the second case, but here you're saying, you're going to the first case and saying, all the secondary cases that it settled. I mean, I've just never seen res judicata applied that way. Usually, you go to the second proceeding and say, this issue is res judicata by the first proceeding. Do you get my question? I think so, Your Honor, but I think that's what's happening here is the plaintiffs, that's exactly what we're saying, Your Honor. The plaintiffs here are bringing these property damage or personal injury cases and they have a cause of action for property damage or personal injury. Then, for example, in the three pending cases in Florida, the state law there requires that they amend later to try and add a, if they want to add a punitive damage claim. So, when plaintiffs amend in those cases, that's, so they start with just the property damage or personal injury claim, which is, I was hurt or. Can you hear me? Yes. Oh, okay. So, I guess my question is, why couldn't you bring the res judicata questions to those Florida cases instead of in the primary? So, we have, Your Honor, in those cases, in all the cases, including the Arizona cases that plaintiffs mentioned, the Arizona case that plaintiffs mentioned in their brief, the defendants asserted a affirmative defense based on the class action release. In the Arizona case, the court granted a summary judgment motion on a different, or summary adjudication of punitive damages claim on a different theory and didn't rule on it. And in the Florida cases, I think one court case, the state, the judges basically are deferring to the California case, but the short answer is we have asserted that affirmative defense. I mean, even if we were to agree with you, what authority does the central district of California case have over the Florida or Arizona case? Your Honor, cut out, but I think Your Honor asked, even if you agree, Your Honor agrees, what authority do you have in Florida? So, I think the answer to that question is those courts are looking to the Ninth Circuit to interpret the agreement as to the plaintiffs and interpret the release. And then the Florida court would, using that interpretation, rule on the affirmative defense of release. And part of the relief we saw in the motion for an interpretation from the district court judge was we asked for a ruling that the plaintiffs had breached the settlement agreement by asserting a release claim and for an injunction in joining any class members. And all those plaintiffs are class members, and they enjoyed the benefits, financial and otherwise, of the settlement, and they were significant. So, they're all class members, and they were asking for a bar that they seek punitive damages based on the language in the settlement. I believe you wanted to reserve five minutes. Yes, I'll reserve my time. Thank you, Your Honor. Thank you, Mr. Merriman. Mr. Beard. Thank you, Your Honor. I think the case comes back to the primary rights argument in race judicata that the counsel is raising ignores the terms of the settlement agreement itself. The terms of the settlement agreement itself are clear. The district court found that they were clear. And all the arguments the counsel was raising are based on the idea that paragraph 6B, which releases the class claims, applies to paragraph 6C, which reserves claims. On the notion that we mentioned punitive damages in the class release. We didn't mention punitive damages in the reserve claim. So, therefore, they're released. And that's basically what we're talking about here. And the district court considered that argument and rejected it. And I think probably so, because if you follow that logic, counsel is trying to carve out just the punitive damage claims. But if you follow that logic, the waiver of the class claims, or the release of the class claims, included specific mention of not just punitive damages, but compensatory damages, declaratory relief, objective relief. It named everything. Which made sense, because those, they wanted a release of the class claims. The reserve claim definition, the reserve claim release, doesn't specifically mention anything. So, they get to a logical conclusion. The defense argument would be that, yeah, somebody that had a fire in a North Pole refrigerator would have a claim, would be able to file a lawsuit. But they wouldn't be able to recover it. Because it had all been released because it wasn't specifically reserved in the definition of reserve claim. Now, the district court, that of course is an absurd result. Because it completely eliminates the whole idea of a reserve claim. Counsel, how do you address opposing counsel's argument that in order to prove the punitive damages, you would have to, it relies on the same evidence as the release claims? Well, two things. First of all, going back to the operative complaint in the Etter case, there was never a punitive damage claim as part of the class claims in the case. The original, the complaint included class claims. And then it also included individual product liability claims for people that had fire. And the, on the class claims, there were no punitive damages. And there were no property damage or personal injury claims sought on a class-wide basis. And on the individual claims, there were punitive damages sought on the individual claims. So the idea that, you know, we're talking about the same language on the individual claims, well, there is overlap because we're talking about the same defective products. But the idea that the language, that the punitive damage language, or the allegations of conduct that we are alleging add up to a punitive damage claim. That was for the individual claims in the original class, and it was never for the class claims. It was never alleged as a part of the class claims. So that's number one. Number two, each one of these individual claims is just that. It's an individual claim. And they have individual facts of the fire, individual facts as to the, as to what the conduct of the plaintiffs were, what the conduct of the defendants were. And so the language of counsel deciding, sure, that shows up in the individual actions. Because it's part of the historical, you know, the historical background for the events leading up to the individual fires. But there's individual allegations on top of that that add to that. And the punitive damages arise out of asserting that they knew about the design of the law, and they, you know, and that's what led to the person's injury. That, well, they allege like a failure to warn, and post-sale failure to warn. And these are all allegated. These are all causes of action that were not class causes of action. In the individual cases, they allege that. They also allege fraudulent concealment. These are all on the individual case, not on the class case. And the claims of Norco not disclosing things, that is common to those individual claims. But that's the reason that the, well, I think part of the problem here is we're mixing up counsel talks about allegations. Well, the allegations that you can't, I don't believe, insist on a release of somebody alleging something in a complaint, having allegations in a complaint. If you have an actual determination, okay, but that's not what happens. And again, the district court in her, during the hearing, brought up a scenario, an example of, you know, what if somebody had talked to Norco, had called Norco up, and talked to them, and Norco had not said anything to them about dangers with regard to the refrigerator, and then there was a fire, and that it was outside the, you know, it was too much to say that that couldn't be alleged because of the release of the class case. And that's exactly what we, you know, that's exactly what we have in some of these individual cases. And there's not the, it's not a matter of record, but I've got, there's new Norco cases come up where exactly that has happened. The people called up Norco and asked them about the recall, asked them about risks and dangers in the fire, and were told, you're good to go, no problem. And then they had a thing, they had a fire, and the refrigerator blew up, and, you know. So that was exactly the kind of scenario that the district court was looking at and considered. And the idea that the district court did not analyze or consider the primary right argument, she did, she specifically inquired the council during the hearing about the effect of the primary right theory. And in her order, specifically rejected it on the grounds that, I think it's a quote that it proves too much. That if you agree that anything said in the class action, if you said that everything in the class action and the individual cases, any common allegations, didn't work a bar to any individual claim, then you wouldn't have any individual claims. Because a lot of the, there's a lot of common overlap between the allegations. But that's getting far afield from the terms of the release. You know, and this is something I did raise in the brief, and I think that it's relevant. This issue first came up back in 2017 during the penancy of the class action. I specifically raised, I was an attorney of record, one of them, for the class, for subclassment issues. And I specifically raised the idea of the possibility that the language could be used to preclude people from pursuing punitive damage claims as part of their reserve claims. That was specifically raised by the court. And the class counsel said there was no need for any further language because the language was clear that punitive damages were part of a reserve claim. And Mr. Barrowin, who was representing Norfolk at the time, didn't object, didn't file any claims to the contrary. And the court entered her initial ruling saying what she said just recently, which is that there's no linkage between the two, that punitive damages are part of a reserve claim if they're otherwise available in that case. Now that's never been challenged. The language that was never challenged in front of Judge Staten during the time before the entry of judgment in that case, after the entry of judgment in that case, it was only raised as affirmative defense once the inter-class action settlement had gone through. And it's our position that this should have been challenged. If Norfolk felt that punitive damages were not part of a reserve claim, they should have made that argument to Judge Staten back in 2017. And by not making that argument to her in 2017, not raising it on appeal, not filing any kind of motion for reconsideration before judgment, anything like that, that they have waived it. And they can't come back now, four years later, and be arguing a completely different interpretation than the one that was put before Judge Staten in 2017 that they did not object to. So, as I said, what our position is, if there's no more questions, I will turn it back over to Mr. Merriman. Okay. Thank you, Mr. Beard. Mr. Merriman. Thank you. Your Honor, I'm going to quickly try to address three points raised by Mr. Beard. The first one is, going back to the primary rights doctrine, first I want to note that the court doesn't need to address the contract interpretation issue, which I'll get to in a moment, if it fines for the defendants on the race punitive grounds. Second, Mr. Beard raised that in the class actions, the plaintiffs didn't seek punitive damages, which I'm sure is not surprising to the panel. But we cited in the brief cases from the California Supreme Court and the Ninth Circuit that say the primary right is not defined by the remedy the plaintiff seeks. It's, again, as stated before, it's defined by the harm suffered or the injury rather than the legal theory or the remedy. And the California Supreme Court case on that point is Boykin v. Phillip Morris and Ninth Circuit, Brodheim v. Cry. So it's completely irrelevant that the class actions didn't seek punitive damage. It's the alleged harm suffered or the injury that's relevant. As to the contract interpretation issue raised by Mr. Beard, it's important to remember the objective of the intent of the parties in entering into this agreement. And the defendant's interpretation that punitive damages are barred gives effect to the entire settlement agreement. There's a lot in the record that a large part of the court's approval of the class settlement was based on the financial condition of the primary defendant, Norcold, and the weakness of the alter ego claims by which plaintiffs tried to bring in the other two defendants. And the fact that the defendants were paying $36 million over four years. And if the plaintiffs could come back in a reserve claim and assert a relief punitive damage claim, it would defeat the entire objective intent of the settlement and the terms of the settlement itself because one simple reserve claim out of hundreds of thousands of class members could, in essence, destroy a settlement that provided any significant... Why couldn't the same argument be set for compensatory damages? Because the compensatory damage... I'm sorry. Whether compensatory damages are barred or whether that... Right, right. The same argument could be set that why can't we just bar compensatory damages because that would upset the settlement agreement. Because compensatory damages were clearly allowed as part of a personal injury or property damage claim. That's what the reserve claims say. Because an element of a personal injury claim or a property damage claim, an element of that claim is the recovery of actual or compensatory damages sufficient to make the plaintiff whole. And so contrary to counsel's argument, the reserve claim doesn't need to say that compensatory or actual damages are reserved because they are... such damages are an element of the claim itself. The parties incorporated California law into the agreement and that California law says that actual damages are part of the plaintiff's compensation for personal injury or property damage and are part of what makes the plaintiff whole. The last point that Mr. Beard raised about his objection literally on the eve of approval of settlement on this issue. This is in the brief, but I'll quickly respond. He filed his request on a Thursday night. That's Volume 2, ER 74. The plaintiff's counsel who supported the settlement agreement filed a brief saying the agreement is clear and if you look at the agreement and the proposed judgment, they're all clear what's released and what's reserved. That was the extent of it. That's Volume 2, Document 55. Mr. Beard then replied that same day on Friday afternoon or at night. That's Volume 2, ER 50. Then as we were preparing our response over the weekend, literally at 8 or 9 in the morning on Monday, Judge Staten ruled and said the agreement is clear. There's nothing more. That was the extent of the ruling and we agree. The agreement is clear. Units of damages are released and the reserve claims are as stated in the reserve language, proper damage and personal injury. That's a complete red herring. I think I've run over. Thank you, Your Honor. Well, thank you, Mr. Merriman and thank you, Mr. Beard. We greatly appreciate your arguments this morning and the matter is submitted. Thank you, Your Honor. Thank you.
judges: BRESS, BUMATAY, Lasnik